New York City Housing Authority, Landlord, *v.* Nathan Benenfeld, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, February 11, 1948.

*John P. McGrath, Corporation Counsel (Milton Sherbowsky and Samuel Brooks* of counsel), for landlord.

*Nathan Benenfeld,* tenant in person.

WHALEN, J. This is a summary holdover proceeding in which the landlord seeks to recover possession of an apartment occupied by the tenant.

The landlord is one of the municipal housing authorities organized pursuant to section 30 of the Public Housing Law of the State of New York (L. 1939, ch. 808). As such, it is exempt from the necessity of procuring an eviction certificate from the New York City temporary city rent commission (Local Law, 1947, No. 66 [Administrative Code of City of New York, § U41-7.0, subd. 1]). The landlord also claims exemption from the restraints of Public Law 129 of the Eightieth Congress (1st Sess.), in effect July 1, 1947 (Housing and Rent Act of 1947 [U. S. Code, tit. 50, Appendix, § 1881 *et seq.*]).

Subdivision (b) of section 209 thereof, so far as material, reads as follows: "Notwithstanding any other provision of this Act, the United States or any State or local public agency may maintain an action or proceeding to recover possession of any housing accommodations operated by it *where such action or proceeding is authorized by the statute or regulations under which such accommodations are administered* * * *." (Emphasis mine.)

The only summary proceeding authorized by the *statute* under which this landlord functions is that contained in subdivision 4 of section 156 of the Public Housing Law. That subdivision provides that, in the event that the family income exceeds a certain amount, the authority may proceed to remove the tenant by summary proceedings. There is no other provision in the statute authorizing the authority to evict the tenant. That section does not apply here, because, in this particular proceeding, the landlord seeks to evict the tenant on the ground that the tenant violated the rules and regulations of the landlord by submitting a false certificate, in writing, to the landlord, with respect to his income. It becomes necessary to inquire, therefore, as to whether or not there is any *regulation* authorizing the eviction of the tenant.

Under section 37 of the Public Housing Law, certain powers are given to the authority, including the power to " make and from time to time amend and repeal by-laws, rules and regula-

tions not inconsistent with the provisions of this chapter '' (subd. 1, cl. [w]).

Section 54 of the same statute provides that: '' No such by-laws, rules and regulations and amendments thereto shall be effective until filed with the commissioner '' (subd. 1).

The landlord has offered in evidence a certified copy of a resolution, numbered 901, adopted by the authority at a regular meeting held June 10, 1943, together with a certificate from the commissioner of housing, stating that this resolution was duly filed in his office on July 31, 1943.

The landlord claims that resolution 901, so called, is the same as a '' regulation,'' in that it provides a set of rules covering those situations where a tenant breaches his rental agreement, either by nonpayment of rent, or in other ways. Section 3B of this resolution reads as follows: '' *Misrepresentation.* When in the course of the annual review of tenants eligibility or at any other time the manager discovers that the tenant has willfully misrepresented his income, family size, citizenship, or any other determinant of his original or continued eligibility for tenancy, it shall be the duty of the manager to notify the tenant of his ineligibility, and to terminate the lease upon the conditions set forth below.''

Section 9A reads as follows: '' The manager is hereby authorized to sign, execute and serve, on behalf of the Authority, and without any further authorization, all notices, demands, petitions, precepts and other documents necessary to secure the immediate eviction of any tenant defaulting in the payment of rent or other charges or of any tenant whose tenancy is terminated under Sections 1, 2 and 3 of this Resolution.''

Although the word '' resolution '' is used instead of '' regulation,'' this resolution lays down certain rules of procedure, which seem to me to have the same effect as though they were called '' regulations.'' While it would be better, in view of the language in subdivision (b) of section 209 of Public Law 129 of the Eightieth Congress, to use the word '' regulation,'' in order to make it perfectly clear that it comes within the exception therein mentioned, I am willing to accept this resolution No. 901 as being a '' regulation.'' Therefore, the landlord has shown that it is authorized by a regulation under which the housing accommodations are administered to maintain this proceeding. Accordingly, I hold that the landlord comes within the exception.

The tenant signed a lease on November 26, 1946, for a term of one month, beginning December 1, 1946, and automatically renewing itself unless terminated. The lease was duly termi-

nated by a thirty-day written notice, effective November 30, 1947. The reason for the termination was as follows: Under the statute this building was constructed for the purpose of taking care of tenants of small income. In order to effectuate its purpose, the landlord must be kept informed, periodically, of the income received by its tenants, because, if the income of the tenant increases beyond the allowable maximum, he is no longer considered eligible to remain as a tenant. In order to get this information, the landlord has devised forms for the statement of income for an immediately preceding past period, which is signed by the tenant and submitted to the landlord, who is then enabled to make an investigation. Any false statement, in this tenant's certificate, is deemed to be ground for terminating his tenancy under the provisions of resolution No. 901, section 3B. This particular tenant signed such a certificate on January 30, 1945, in which he stated that his income, for the calendar year 1944, was $1,962.50, as an employee of Plaza Manufacturing Company, 39 Broome Street. He specified no other income. In answer to the question: " Do you or any members of your family own an interest in the firms listed above? " his answer was: " No." The tenant filed another certificate, dated February 19, 1947, covering the calendar year 1946, in which he gave the name of his employer as " B. Benenfeld," and he gave his total income as $3,200. Again, in answer to the question as to any interest in the firm, his answer was " No."

Subsequently, it developed that this tenant had signed a certificate of doing business as a partner, on June 6, 1945, stating that he was a partner in the business known as Plaza Products Manufacturing Company, 39 Broome Street. The landlord also submitted a written stipulation, signed by the tenant, in which he conceded that he " misrepresented to the Landlord that he or members of his family had no interest in the Plaza Products Manufacturing Company, whereas he and members of his family own interest in said firm."

From the foregoing, it appears that the tenant has misrepresented his income in a way that authorized the landlord to terminate his tenancy and to bring a summary proceeding to dispossess him, as provided by resolution No. 901, and that this is one of the exceptions provided for in subdivision (b) of section 209 of Public Law 129 of the Eightieth Congress. Under purely local law, the restraining provisions of the Federal housing act being removed, the lease has been effectively terminated. Accordingly, the landlord is entitled to a final order.